SAMUEL K. COZINE *et al. v.* BENJAMIN H. GRIMES,
ADMINISTRATOR, ETC.

EXEMPT PROPERTY. *Descent and distribution. Life insurance. Code*
1892, §§ 1964, 1965.

Code 1892, §§ 1964, 1965, exempting the proceeds of life insurance
policies, to the extent named, from liability to the creditors of the
decedent, does not provide cumulative exemptions, but should be
so construed as to give each distributee, under the latter section,
sufficient only to make the whole insurance money received by
him on the life of the decedent equal to his ratable share of $5,000.
TERRAL, J., *dissented.*

FROM the chancery court of Lauderdale county.

HON. NATHAN C. HILL, Chancellor.

Benjamin H. Grimes, administrator of the estate of Brandon, appellee, instituted the suit in the court below. The appellants were defendants there. Brandon died intestate, leaving a widow and an infant child, each being entitled to inherit one-half of his estate. He left two policies of life insurance, aggregating $5,000, payable to his executor or administrator. His life was also insured in his wife's favor for $3,000, which she collected soon after her husband's death. The heirs claimed that the entire insurance was exempt from liability to decedent's creditors. The creditors, not being able to realize their debts from other property of decedent, contended that the insurance money collected on the policies which were payable to the executor or administrator was liable to their demands. The administrator, having collected the $5,000 insurance money, filed a petition against the creditors of the estate, in the nature of an application to the court for directions how

to distribute the fund.   The court below adjudged that the entire $5,000 was exempt, and the creditors appealed.

The code sections involved are in these words, viz.:

"1964.   *Amount of life insurance policy; how payable.*— The proceeds of a life insurance policy, to an amount not exceeding ten thousand dollars, upon any one life, shall inure to the party or parties named as the beneficiaries thereof, free from all liability for the debts of the person whose life was insured, even though such person paid the premiums thereon.

"1965.   *The same; payable to executor*, etc.—The proceeds of a life insurance policy, not exceeding five thousand dollars, payable to the executor or administrator of the insured, shall inure to the heirs or legatees, freed from all liability for the debts of the decedent; but if the life of the deceased be insured for the benefit of his heirs or legatees at the time of his death, otherwise, and they shall collect the same, the sum collected shall be deducted from the five thousand dollars, and the excess of the latter only shall be exempt.''

*Amis & Dunn*, for appellants.

By the terms of the contract of insurance itself the $5,000 was payable to the executor or administrator of decedent's estate.   No one·else had any right or title to collect or receipt the insurance company for the money.   Nor does the contract of insurance, or any other contract in writing, by its terms in any way limit or burden this fund with any trusts, conditions or other thing whatever.   So far as the contract of insurance itself could or did go, the executor or administrator was entitled to take, and did take, by purchase, and not by descent, just as much and to just as great an·extent as if he had been designated as the beneficiary *eo nomine* in his own individual right.   We apprehend that it will not be contended that a beneficiary in an insurance policy specifically named takes otherwise than by purchase  or by contract, which in legal contemplation amounts to the same thing.   *Yale* v. *McLaurin*,

66 Miss., 461. Now, if this construction of the contract of insurance be correct, so far as relates to the ' executor or administrator, then, aside from all statutes of exemption, the money has come to the hands of the executor or administrator by a purchase on the part of the decedent for his administrator's benefit, and he (the administrator) holds the same by a complete and perfect title, either in his own right and for his own benefit, or he holds it in his fiduciary capacity for the purpose of administration. Am. & Eng. Enc. L., 650–651, and notes to the text.

In order that § 1965, code, which operates as a practical conveyance of this money from the administrator to the heir, shall apply, the heir must bring himself strictly within the terms of the statute before he would be entitled to take. In other words, if the heir, or all the heirs jointly, have collected other insurance on the life of the decedent to the amount of five thousand dollars, then they would be disqualified to take this fund under the terms of the statute, whether the other insurance was payable to them as heirs *eo nomine* or otherwise. *Yale* v. *McLaurin*, 66 Miss., 461; *Rice* v. *Smith*, 72 Miss., 42; *Coates* v. *Worthy*, 72 Miss., 575; *Jones et al.* v. *Patty*, 73 Miss., 179.

*G. Q. Hall & Son*, on the same side.

Was it the intention of the lawmaker to cumulate the provisions embodied in the two code sections—1964, 1965 ? If so, the debtor could exhaust his estate in carrying $10,000 insurance payable to his children, and $5,000 payable to his legal representatives, and thus at his death secure to them, freed from all liability for his debts, the entire $15,000 of insurance moneys. Can such an interpretation be made to harmonize with the one provision in the section fixing $10,000 as the maximum exemption, and the other section fixing $5,000 as the maximum exemption ? What does the latter part of § 1965 mean, in the express provision that if there be insurance other-

wise for the benefit of heirs or legatees at the time of the death of the insured, that such other insurance shall be deducted from the $5,000, and that the excess of the $5,000, after such deduction, only shall be exempt? To what can the expression, "otherwise" insured, or, insured "otherwise," have reference than other insurance different from that provided for in § 1965? Again, is the object of § 1965, in a case like this, where there were two heirs, and only one was "otherwise" provided for, to set aside a $5,000 exemption for each heir?

Our contention in the court below, and we respectfully submit the same here, as harmonizing these two sections, is that of the $5,000 payable to the legal representatives of intestate, one-half thereof should have been set apart to the child, and one-half to the widow, there being only two heirs, in the absence of any provision by way of insurance or otherwise; but since one of these heirs had otherwise been provided for to the full extent of her rights under said sections, her half of said $5,000 became subject to the liabilities of decedent.

*Ethridge & McBeath*, on same side.

This cause hinges upon the construction of § 1965, code of 1892, and as this court says in the case of *Coates* v. *Worthy*, 72, Miss. 579, "The language of § 1965 leaves no room for contention."

Digesting this section by sentences and applying to the case before us, Grimes, administrator, collected the $5,000 policy on life of deceased, which, under the first part of the section, would be exempt, unless what? "But if the life of deceased be insured for the benefit of his heirs or legatees at the time of his death otherwise, and they shall collect the same, the sum collected shall be deducted from the $5,000." Certainly the contingency arose in this case. Brandon had his life insured for the benefit of his wife, one of the heirs at the time of his death "otherwise," and surely that brings it within the section. *Jones* v. *Patty*, 73 Miss., 179; *Bishop Brothers* v. *Curphey*, 60 Miss., 27.

*Miller & Baskin*, for appellee.

The $3,000 that was collected by the widow never was a part of the estate of the decedent, and it is beyond the power of the court to lay its hands upon this $3,000 and make the same assets of said estate for any purpose.

The widow and the child of Brandon did not possess any other insurance as heirs or legatees of the decedent, except the $5,000 now in the hands of the administrator of this estate; this was all the insurance that went to this estate, and this amount is exempt, and the decree directing the administrator not to pay to said creditors any portion of said amount of $5,000, but to pay the same to the widow and to the child, was eminently proper, and in accordance with statute, § 1965, and the decisions of this court.

Argued orally by *G. Q. Hall*, for appellants.

WHITFIELD, J., delivered the opinion of the court.

This case has given us great trouble in view of the language of § 1964 and § 1965, code of 1892, and the fact of there being two heirs. One is provided for otherwise to the extent of $3,000 and one is not provided for otherwise at all. In a case like this one, where the decedent has left insurance policies payable to his executor or administrator to the amount of five thousand dollars, and also insurance otherwise, payable to some but not to all his heirs, the two sections, 1964 and 1965, must be construed together. Section 1965 operates as a check upon § 1964 and so as to work out the manifest purpose in the legislative mind. And the policies of insurance are then to be construed in the light of both sections thus taken and considered together. That manifest purpose seems to be this: that when there is no insurance otherwise, the sum of $5,000, if payable to the executor or administrator, shall constitute the maximum amount set apart as exempt to the heirs or legatees. That was deemed a sufficient sum in such contingency to provide against

destitution. But if the heirs or legatees were, either all or some only of them, otherwise provided for by insurance than as marked out in § 1965, and the decedent left $5,000 insurance as marked out in § 1965 also, then § 1965 was not to provide cumulative exemptions, but should be so construed as to give each heir or legatee, together with what he otherwise might get, an additional amount, sufficient only to make the whole insurance received by him equal to what his ratable share of the $5,000 would be. To illustrate by the case in hand, the child who was not otherwise provided for by insurance is entitled to his *pro rata* share, one-half of $5,000, to wit, $2,500, undiminished by any consideration of what insurance otherwise was provided for his mother. The mother having $3,000 of insurance otherwise, has received $500 more than her *pro rata* share of the $5,000, to wit, $2,500, and is entitled to no part of the $5,000 till creditors are satisfied. The heirs and legatees are to be dealt with distributively, according to the facts of their respective conditions, as otherwise insured for or not, and if so, for how much each. The excess here over $2,500 is to be used in the payment of the creditors of the decedent, and the balance will then be divided, under the statutes of descent and distribution, equally between the two heirs. If, as a result of this division of the residue and of the part that the mother was otherwise provided with, the $3,000 of insurance, she should get more than the child, the answer is, so the policy for $3,000 is written and so are the statutes written, and the decedent made his contracts charged with a knowledge of the law. He could have secured equality, if he had desired, by making the insurance otherwise payable to wife and child in equal shares.

We adopt the above construction as the best harmonizing the various provisions of the two sections, and as working out thereunder, as applied to the contracts here, the three insurance policies, the clear purpose of the legislature. The purpose of the legislature was to limit an amount as exempt—$5,000 out of

a policy payable to the executor or administrator. Whether this sum reaches the heirs by descent, as a part of the estate, having been first paid under the contract—the policy—to the administrator or executor, or, as seems the better view, goes to them by purchase, through the channel of the statute (§ 1965), as a statutory disposition or conveyance of it, the result is the same. The original of § 1965—the act of April 1, 1892, in section 2—used the language " so as to leave $5,000 only exempt as aforesaid," and the last clause of § 1965 means the same thing, though the verbiage is slightly different. If it be said that this construction makes trouble as to the provisions in § 1964, that " ten thousand dollars insurance should be exempt from the debts of a person whose life was insured otherwise " than in § 1965, the answer is, that that statute declares in that view what the law was without it, since the beneficiary in such a policy takes by and under the contract, anyway, to any amount, saving the creditors the right to recover in case of his insolvency when making the contract and paying the premiums the amount invested by the insolvent as premiums, as pointed out in *Jones* v. *Patty*, 73 Miss., 179. Policies otherwise than as marked out in § 1965, there being none under that section, to the amount of $12,000 ($2,000 in excess of $10,000) were decreed therein to Mrs. Patty. If there had been insurance there, as here, payable to the executor or administrator, she would have no part of it. This is not saying that one to whom a policy is payable under § 1964 may not take the whole, if the insured were solvent, when making the contract and paying the premiums, no matter how large the amount, since it is no part of the estate of the insured; but that it is competent for the legislature, in such case, to say that § 1965 shall not apply in favor of such persons, so otherwise abundantly provided for. Suppose the case of any one heir, insured under § 1964 for $100,-000, and a policy of $5,000 payable to the executor of the insured, who owed $10,000. It is plain the legislature never meant to enrich the already rich and take from the creditors of

the decedent the $5,000 and give it to the heirs with $100,000 otherwise.

The view, too, that the proviso to § 1965 never comes into play unless literally the policy therein is payable to all the heirs or all the legatees, and that, for that reason, the whole $5,000 should be exempt here to the mother and child, will not bear analysis.   Suppose the case of ten heirs, nine otherwise insured, each in a different sum, from $100,000 down to $50,000, and the tenth not at all.   Shall the proviso not apply to all, and the $5,000 be divided equally between the ten?   Or all go to the tenth?   Suppose the case of one heir, who would be all the heirs also in such a case, insured otherwise for $100,000. Should the proviso apply in such case, and he get $105,000, leaving creditors naught?   Suppose the case of one heir and one legatee, and the legatee otherwise provided for to the amount of $100,000, and the heir not at all.   Is the $5,000 to be exempt and divided equally between the heir and the stranger—legatee?   Such a construction would be monstrous.

Nor can the view that here the $3,000 should be deducted from $5,000, and the excess ($2,000) be paid to the widow, be supported; for the insurance otherwise, thus deducted, is the property of but one heir, and, besides, the "excess" is treated by the statute as a sum divided, share and share alike, among all the heirs.   Nor can the view be supported that the $3,000 should be deducted from the $5,000 and the $2,000 excess divided equally between the two; for that would diminish the wholly unprovided heir's share, because of the insurance otherwise of another, and give that other $1,500 more than her *pro rata* share of the $5,000.   Suppose the policy otherwise to the widow had been $5,000.   Then neither would get anything out of the $5,000 taken out under § 1965; the widow would have $5,000 otherwise, and the child nothing. It is impossible to attribute such folly to the legislature.

We have given the case the most critical study, and announce

the view adopted herein as the only rational construction—just alike to heirs, legatees, and creditors.

The decree is reversed and the cause remanded, with directions to pay the child's guardian one-half the net sum realized from the $5,000 policy; to then pay all legal debts and charges out of the balance thereof, and the residue to divide equally between the mother for herself and as the guardian of the child.

TERRAL, J., dissenting.

I differ from my brethren as to the construction of § 1965. I concur with them that the creditors should be paid, and I think they should be paid in full even to the sum of $3,000 (in round numbers) if their debts had amounted to so much, but after the payment of creditors the balance should be equally divided between the widow and the daughter of the intestate. I think the widow entitled to an heir's part of Brandon's estate, of which the $3,000 policy falling to her is no part, and I see no more reason for diminishing her share of his estate by the amount of $3,000 policy than by her ownership of other property, if such shall be the fact.

I think the legislature by § 1965 intended to make a provision in favor of creditors by applying to the payment of their debts the moneys collected of policies payable to administrators, after deducting so much of it as with the moneys collected of policies payable to one or more heirs would amount to $5,000.

I think it was intended that creditors should have appropriated to their debts all of the money collected of any policy payable to an administrator, after deducting a sum, if necessary, which, added to the money collected from any other policy made by such intestate and payable to one or more of his heirs, would equal $5,000, and that that part of the $5,000 which is thus secured to the heirs should be equally divided among all the heirs.

The language of § 1965, to my apprehension, is not ambiguous or obscure on its face, and I know of no rule of construc-

tion that allows judges to work ·out a division of a decedent's estate contrary to that fixed by statute. Mr. Brandon must have known that the $3,000 policy payable to his wife would, on his death, be no part of his estate, but would be hers independent of her share of his estate, and that all of the $5,000, payable to his administrator, after deducting the $3,000 payable to his wife, would be applied, if necessary, to the payment of his debts, and the balance equally divided between his wife and child, and it was competent for him to make such a disposition of his property as to accomplish such result.

That acts of the legislature are to be construed according to the plain and ordinary meaning of the words used in them, is a rule of construction laid down by approved authors, and that rule, it appears to me, guides the interpretation of § 1965.

That the legislature might have applied the whole of policies payable to administrators to the payment of debts is undeniable; that it merely secured the sum of $5,000 to the heirs, less any sum collected on policies payable to one or more, but not to all the heirs, was a matter of legislative discretion. I don't suppose the legislature anticipated the inequalities of the division of estates among heirs, that might arise under § 1965, and that it was laboring to effect equality among them. I think it was looking wholly to the interest of creditors of estates.